# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**LIZBETH VARGAS-COLÓN, et al.,**

**Plaintiffs,**

**v.**

**FUNDACIÓN DAMAS, INC., BANCO**

**POPULAR DE PUERTO RICO, et al.,**

**Defendants.**

CIVIL NO. 14-1909 (GAG)

## OPINION AND ORDER

In what appears to be a concerted tautological strategy to resuscitate claims in light of a medical malpractice settlement's interruption by a bankruptcy proceeding, Lizbeth Vargas Colón ("Vargas Colón"), in representation of her minor daughter L.C.V. ("Minor L.C.V."), and her sons Jaime Manuel Cedeño Vargas and Jaime Alexander Cedeño Vargas ("sibling plaintiffs") (collectively "Plaintiffs") filed this action under diversity jurisdiction against Fundación Damas, Inc. (hereinafter "Fundación"), Banco Popular de Puerto Rico (hereinafter "BPPR"), and any unknown insurance companies liable for the actions of Fundación and BPPR ("Insurance Companies") (collectively "Defendants").[1] (See Docket No. 9)

---

[1] Plaintiff Lizbeth Vargas Colón, a citizen and resident of Florida, appeared before this court in representation of Minor L.C.V., joined the sibling plaintiffs, whom are both citizens and residents of the state of Florida. (Docket No. 9 ¶¶4-5.)

Defendants, Fundación and BPPR, are distinct corporations organized under the laws of the Commonwealth of Puerto Rico and whose principal place of business is Puerto Rico. Docket No. 9 ¶¶ 6- 7.

Civil No. 14-1909 (GAG)

Plaintiffs bring a direct and vicarious liability claim of medical malpractice against Fundación; pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141, 5142, for negligent acts and omissions committed by Hospital Damas, a subsidiary of Fundación and its agents; a direct action against any of Defendants' insurers pursuant to P.R. LAWS ANN. tit. 26, § 2003; and a negligence action against BPPR, as Trustee of the Hospital Damas Self Insurance Trust Fund ("Damas Trust"), a trust established pursuant to Puerto Rico's Insurance Code, P.R. LAWS ANN. tit. 26, § 4105 ("Section 4105") that requires healthcare professionals and institutions maintain a minimum threshold of financial solvency to be able to meet potential malpractice claims and in order to be licensed to provide medical care.   (Docket No. 9.)

Pending before this Court are Fundación's motion for summary judgment, (Docket Nos. 48 and 49), and BPPR's motion to dismiss, (Docket No. 50.)   For the foregoing reasons, after reviewing the parties' submissions and pertinent law, Fundación's motion for summary judgment is **GRANTED** and BPPR's motion to dismiss is **GRANTED**.

I.   **Relevant Facts and Procedural Background**

The facts that give rise to the instant and prior judicial proceedings date back to 2000, when Vargas Colón gave birth to Minor L.C.V. at Hospital Damas in Ponce, Puerto Rico. (Docket No. 9 ¶¶15-21.)   On November 29, 2000, Minor L.C.V. was delivered by caesarean section.  Id.  Vargas Colón was attended by Doctor Nelson Velez ("Dr. Velez") and assisting staff at Hospital Damas.   (Docket No. 9 ¶¶15, 17.)   Plaintiffs posit that Minor L.C.V. suffered severe and permanent injuries at childbirth while under the care of Dr. Velez and the staff at Hospital Damas.   Id. ¶19.   They contend that, as a result of Fundación's negligent care, Minor L.C.V.

Civil No. 14-1909 (GAG)

suffered multiple severe neurological defects, among them: mental retardation, microcephaly, and brain cell death and brain atrophy.[2]  Id.  ¶18.  Plaintiffs argue Fundación departed from the standard of care of the medical profession when treating Vargas Colón during the delivery of Minor L.C.V., it is liable under Article 1802 of the Puerto Rico Civil Code.  (Docket No.  9 ¶23.)  Moreover, Plaintiffs contend that Fundación is vicariously liable, under Article 1803 of the Puerto Rico Civil Code, for the negligent acts and omissions of the other defendants and medical staff, "in monitoring, supervising and granting privileges to said nurses and doctors."  (Docket No. ¶25.)

### a.  Prior judicial proceedings

In January 2007, Minor L.C.V., a minor represented by her mother, Vargas Colón filed suit before this Court, Case No. 07-1032 (JAG), invoking Articles 1802 and 1803 of the Puerto Rico Civil Code holding Hospital Damas directly and vicariously liable for the injuries that Minor L.C.V. endured as a result of the negligent care afforded to Vargas-Colón by the medical staff at Hospital Damas during the delivery of Minor L.C.V.  ("2007 Complaint").  (Docket No. 49 ¶2.)  Said case included as defendants "Hospital Damas" and "John Doe Corporation", as the "owner and operator of a hospital of the same name, located in Ponce, Puerto Rico," Dr. Nelson Vélez Martínez and Sindicato de Aseguradores ("SIMED"),   and claimed damages in excess of $10,000,000 against the defendants.  Id.  ¶¶2-4.

Hospital Damas' successor entity, Hospital Damas, Inc. (hereinafter "HDI"), entered into a confidential settlement agreement with Plaintiffs and jointly requested the dismissal of the case.[3]

---

[2]  Plaintiffs provide a detailed recital of minor L.C.V.'s injuries. (See Docket No. 9 ¶¶17-21.)

[3]  All pleadings related to the settlement agreement in Case No. 07-1032 (JAG) have been filed restricted, pursuant to this Court's order at Docket No. 22.

Civil No. 14-1909 (GAG)

Id. ¶5.  This settlement agreement provided for a sum of money to the paid to Minor L.C.V. in eight separate installments over eight years.  Id.   This Court approved the settlement and entered judgment, dismissing all claims with prejudice.  (Docket No. 49 ¶10.)

After making the first of the payments pursuant to the settlement agreement, HDI filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code.  (Docket Nos. 49 ¶11; 67 ¶11.) Minor L.C.V. and her parents took part in HDI's bankruptcy proceeding as part of the class of malpractice claimants. (Docket Nos. 44 ¶12; 67 ¶11.)  Plaintiffs, along with other malpractice claimants, moved to dismiss HDI's bankruptcy petition, arguing that said petition had been fraudulently filed in bad faith.   (Docket Nos. 49 ¶14; 67 ¶14).  Specifically, Plaintiffs, along with other creditors, argued that the owner of Hospital Damas' license was Fundación, and not HDI, thus the bankruptcy petition was fraud and the operation of Hospital Damas was illegal.  (Docket Nos. 49 ¶15; 65 ¶15.)

The Bankruptcy Court held a hearing to consider the merits of this motion and subsequently issued a thorough and well-versed Opinion and Order denying the request for dismissal and reasoning that: "Fundación Damas, a not-for-profit corporation, owns the real property on which the hospital facility known as Hospital Damas is located" and "[i]n 1987, Fundación Damas incorporated the debtor and then leased the hospital facility to the debtor."  See In re Hospital de Damas, Inc., 2012 WL 1190651 at *5 (Bankr. D.P.R. 2012). Furthermore, the Bankruptcy Court concluded that HDI had been operating Hospital Damas since 1987.   (Id. at 6; Docket Nos. 48 ¶19; 67 ¶19.)  At the conclusion of the bankruptcy proceeding, plaintiffs in the prior action received a pro-rata distribution of their proof of claim.  (Docket Nos. 49 ¶25; 67 ¶25.)

Shortly thereafter, on June 6, 2012, the plaintiffs who had settled the 2007 case, moved to amend *nunc pro tunc* the judgment entered on the prior settlement to include Fundación, HDI's

4

Civil No. 14-1909 (GAG)

non-bankrupt parent entity, as a party to the settlement.  (Docket Nos. 49 ¶20; 67 ¶20.)  The

Magistrate Judge recommended that the motion be denied because the motion was improperly

filed, because Fundación's absence was not a harmless clerical error, and relief against Fundación

was now precluded by the prior judgment. (Docket Nos. 49 ¶21; 67 ¶21.)   Over plaintiffs

objections, the District Court adopted the Magistrate Judge's recommendation.  (Docket Nos. 49

¶22; 67 ¶22.)    In doing so, the Court stated that "[a]s explained by the magistrate judge, the

Bankruptcy Court made the factual findings that, regardless of Fundación's ownership of the

property comprising the hospital, Hospital  Damas, Inc. was *indeed* the hospital's operator since

1987, and; thus, liable for the negligence that caused Plaintiff's injuries." (Docket No. 49-6 at 2-

3.)   Nonetheless, the District Court stated that it was only deciding the issue of the motion to

amend judgment, and not making any substantive findings on whether plaintiffs had a cognizable

claim against Fundación.  The denial was grounded on Plaintiffs request not being procedurally

sound.  Id.

The First Circuit affirmed the District Court's ruling and went further by echoing the

Court's adoption of the Bankruptcy Court's findings.

> Adding belt to suspenders, the district court also declared that it was 'not
> persuaded by Plaintiff's argument that Fundaci[ó]n Damas, Inc. was and is the
> only lawful owner and operator of the Hospital Damas and, as such, liable for the
> settlement agreement that led to a judgment from this court.  Rather, the district
> court determined, the bankruptcy court *had conclusively adjudicated* the fact that
> [HDI] was . . . the hospital's operator . . . , and, thus, liable for the negligence that
> caused Plaintiff's injuries.

Vargas-Colón v. Hosp. Damas, Inc., 561 F. App'x 17, 21 (1st Cir. 2014) (emphasis added).

Moreover, the First Circuit also characterized its ruling as focused solely on the procedural vehicle

before it, and not on whether there was any cognizable claim Plaintiffs could lodge against

5

Civil No. 14-1909 (GAG)

Fundación.  See Vargas-Colón, 561 F. App'x at 22 ("These issues are, at best, for another day in another case.").

On June 27, 2012, Minor L.C.V, Vargas-Colón and her husband filed a complaint against BPPR in the Puerto Rico Court of First Instance alleging, *inter alia*, that BPPR's mismanagement of the Damas Trust funds "impaired" the Plaintiffs' ability to collect on her settlement judgment "in violation of Puerto Rico's Code of Insurance."  (Docket No. 49 ¶29.)   A parallel litigation involving similar claims, but a different defendant, made its way to the Puerto Rico Court of Appeals.  That court ultimately held that the Insurance Commissioner had primary jurisdiction with respect to the Damas Trust.  Id. at ¶¶31-32.  On April 18, 2013, BPPR moved to dismiss this action for want of jurisdiction and Plaintiffs voluntarily dismissed their complaint "informing the court that they were going to continue their claim with the [Insurance Commissioner]."  Id. at ¶34.

**b.  The case at bar**

Plaintiffs bring direct negligence and vicarious liability medical malpractice claims against Fundación, pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141, 5142, for negligent acts and omissions committed by Hospital Damas, a subsidiary of Fundación and its agents; a direct action against any of Defendants' insurers pursuant to P.R. LAWS ANN. tit. 26, § 2003; and a negligence action against BPPR, as Trustee of the Hospital Damas Self Insurance Trust Fund ("Damas Trust"), a trust established pursuant to Puerto Rico's Insurance Code, P.R. LAWS ANN. tit. 26, § 4105 ("Section 4105"), which requires that healthcare professionals and institutions maintain a minimum threshold of financial solvency to be able to meet potential malpractice claims and in order to be licensed to provide medical care.   (Docket No. 9.)

6

Civil No. 14-1909 (GAG)

The cause of action against Fundación rests upon a direct claim of medical malpractice under Article 1802 of the Puerto Rico Civil Code and vicarious liability under Article 1803. (Docket No. 9 ¶¶24-25.)  The cause of action against BPPR rests upon a claim of negligence premised on a breach of fiduciary duty owed to Plaintiffs, as alleged beneficiaries of the Damas Trust. (See Docket No. 9 ¶¶29-38.)  Conspicuously similar to prior legal action iterations, Plaintiffs again seek redress in the form of economic and non-economic damages from Defendants for alleged incidents of medical malpractice and alleged violations of Puerto Rico's Insurance Code provisions governing the management and administration of a medical malpractice self-insurance trust assets, in addition to an alleged breach of fiduciary duties owed to the self-insurance trust's beneficiaries by the Trustee.  Id.

BPPR timely filed a motion to dismiss.  (Docket No. 50.)  Fundación timely filed a motion for summary judgment.  (Docket No. 48.)   Plaintiffs timely responded and opposed both motions.  (Docket No. 66.)  The Court addresses the parties' arguments seriatim.

## II.    BPPR's motion to dismiss

With respect to the negligence claim against BPPR, as Trustee of the Damas Trust, the matter is one of first impression for this Court.  The gist of Plaintiffs' negligence claim against BPPR revolves around an alleged mismanaging of the assets within the Damas Trust.  Plaintiffs allege that BPPR unlawfully withdrew funds from the Damas Trust for purposes other than paying malpractice claims, invested more than 5% of the funds in its own shares, creating a "grievous" conflict of interest, and that, as "declared creditors" of the Fundación, they have an interest in the Damas Trust as beneficiaries.  (Docket No. 9 ¶¶29-38.)

The origins of the present Damas Trust date back to June 27, 2003, when Fundación and HDI entered into a trust deed to amend a prior trust deed, from December 13, 1989, that created a

7

Civil No. 14-1909 (GAG)

medical malpractice guarantee trust, otherwise also known as a self-insurance trust, established pursuant to Section 4105.  (Docket Nos. 49 ¶26; 9 ¶29.)  The Damas Trust Deed names both HDI and Fundación as settlors and declares that "[t]he trust is established for the purpose of paying malpractice claims against HOSPITAL DAMAS and the SETTLOR."  (Docket No. 49-8 at 4.)  The Damas Trust is supervised by the Commissioner of Insurance of Puerto Rico ("Insurance Commissioner") who must authorize any disbursements made to malpractice claimants pursuant to Section 4105.  (Docket No. 49 ¶¶26-27.)  According to the Damas Trust Deed, once the Insurance Commissioner approves a disbursement, the settlor's board of directors may proceed to make a written request to the Trustee and direct the Trustee to make "such payments at such times to such persons and in such amounts" as the Board requests.  (Docket No. 49-8 at 10.)

Plaintiffs are claiming damages for alleged medical malpractice that, allegedly, occurred when Vargas and L.C.V. were receiving treatment at Hospital Damas and for an alleged negligence in administering the Damas Trust.  The complaint's factual allegations substantially focus on the medical malpractice claim and allege that Fundación is both directly and vicariously liable for negligent acts and omissions in providing medical care.  However, Count III of Plaintiffs' complaint is a specific cause of action against BPPR, alleging that both BPPR and Fundación are liable for BPPR's mismanagement of the funds within the Damas Self Insurance Trust Fund as Trustee of the same.  (Docket No. 9 ¶¶9-13.)

The Damas Trust was established pursuant to the Puerto Rico Insurance Code, P.R. LAWS ANN. tit. 26, § 4105, and functions as vehicle to guarantee the payment of malpractice claims against medical care providers.  To wit, the gist of Plaintiffs' allegations against BPPR is that it was negligent and in breach of fiduciary duties in, *inter alia*, (i) withdrawing funds for anything other than to pay for malpractice claims against Hospital Damas and Fundación, (ii) investing

Civil No. 14-1909 (GAG)

more than five percent of the Damas Trust's funds in BPPR shares in a manner that constituted a "grievous conflict of interest" to the detriment of malpractice claimants as "beneficiaries" of the Damas Trust and (iii) mismanaging and squandering the funds of the Damas Trust. (Docket No. 9 ¶¶ 9-13.)

    In its motion to dismiss, BPPR argues that the Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).  In particular, BPPR posits that Plaintiffs failed to allege a causal nexus between BPPR and medical malpractice, BPPR is not an insurer directly liable pursuant to P.R. LAWS ANN. tit. 26, § 2003, and that Plaintiffs do not have standing to pursue a claim against BPPR for the alleged mismanagement of the Damas Trust funds.  However, this court does not read Plaintiffs' complaint to allege that BPPR is liable for medical malpractice or is an insurance company on the hook for damages. Nebulous references to concepts of "negligence" cabined by invoking the reorganization plan in Plaintiffs' Opposition to BPPR's Motion to Dismiss does nothing to clarify the matter.  (Docket No. 66 at 9-12).  As such, this court will focus on Plaintiffs claim against BPPR for the alleged negligence in administering the Damas Trust funds.

    This Court agrees with BPPR's contention that the negligence claim fails for Plaintiffs' lack of standing.  BPPR owed no duty, fiduciary or otherwise, as Trustee of the Damas Trust, to Plaintiffs as malpractice claimants and, in any case, it is the Puerto Rico Commissioner of Insurance, not Plaintiffs, who has standing to pursue claims against BPPR for alleged mismanagement of the Damas Trust.  Accordingly, this Court **GRANTS** BPPR's motion to dismiss.

Civil No. 14-1909 (GAG)

### A. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is

Civil No. 14-1909 (GAG)

liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

### B. Negligence Claim Against BPPR as Trustee of Damas Trust

BPPR argues that Plaintiffs have no standing to sue BPPR for any alleged breach of fiduciary duties because Plaintiffs are not "beneficiaries" of the Damas Trust and the Insurance Commissioner has primary jurisdiction over the claims lodged against BPPR for any alleged mismanagement of the Damas Trust. (Docket No. 50 at 9-18.)  Plaintiffs argue unpersuasively that BPPR misunderstands their argument and that the claim against BPPR rests on BPPR's mismanagement of the Damas Trust's funds.  Plaintiffs maintain that their right to pursue such claim is sanctioned by the Bankruptcy Court's approval of the reorganization plan.  (Docket No. 66 at 9-12.)  If this were a poetry competition, Plaintiffs' argument would undoubtedly seize the day.  However, as court of law, and this Court declines Plaintiffs' invitation to partake in such judicial acrobatics.  This Court does not recognize a private negligence right of action for a medical malpractice claimant against a medical malpractice insurance trust established pursuant to the Puerto Rico Insurance Code.  See Tit. 26, § 4105.  In the alternative, the Insurance Commissioner, not this Court, has primary jurisdiction over claims involving the Damas Trust.

Under Puerto Rico's general tort statute, a person is liable in tort when "by an act or omission [they] cause damage to another through fault or negligence."  P.R. Laws Ann. tit. 31, § 5141.  "As a general rule, a person is only liable for his own acts or omissions and only by exception is a person liable for the acts or omissions of others." Ocasio v. Hogar Geobel Inc., 693 F. Supp. 2d 167, 178 (D.P.R. 2008) (citing Vélez v. Llavina, 18 P.R. 656 (P.R. 1912)). This has been interpreted to require a plaintiff to demonstrate: "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a

**Civil No. 14-1909 (GAG)**

causal connection between the damage and the tortious conduct." <u>Woods-Leber v. Hyatt Hotels of P.R., Inc.</u>, 124 F.3d 47, 50 (1st Cir. 1997) (citing <u>Soc. de Gananciales v. Gonzalez Padín</u>, 17 P.R. Offic. Trans. 111, 125 (P.R. 1986)).  In the instant action, for Plaintiffs' negligence argument to find a negligence hat rack to hang itself on, BPPR must have owed a duty to Plaintiffs as Trustee of the Damas Trust.

The Damas Trust was established pursuant to the Puerto Rico Insurance Code.  Relevant provisions of the Insurance Code require medical care providers to be financially solvent, in part to guarantee their ability to meet potential malpractice claims, and permit providers to comply by depositing a minimum amount of funds in a guarantee trust "created according to the laws of the Commonwealth of Puerto Rico." <u>See</u> P.R. LAWS ANN. tit. 26, § 4105(1)(b);  <u>see also</u> <u>Maldonado v. Damas Found., Inc.</u>, No. 12-1042(JAG), 2013 WL 1943053, at *1 (D.P.R. 2013).  Pursuant to Puerto Rico's Trust Law, beneficiaries of a trust have standing to pursue remedies against a Trustee, including asking a court to remove the Trustee, order the Trustee to compensate for damages to Trust assets, appointing a receiver to administer the Trust assets. <u>See</u> P.R. LAWS ANN. tit. 32, § 3353d.  A trust beneficiary is a person or entity for whose benefit the trust is established. <u>See</u>  P.R. LAWS ANN. tit. 32, § 3353.  While Plaintiffs may obtain incidental benefits from the Damas Trust by virtue of being medical malpractice claimants, the notion that a "person who merely benefits incidentally from the performance of the trust is not a beneficiary" is one of the basic tenets of trust law. <u>See</u> Restatement 3d of Trusts § 48 (2012).  To be sure, the Damas Trust's performance is intimately tied to the benefit of a specific class of persons (malpractice claimants), but these "benefits" are obtained by way of a process wholly independent from the day-to-day management of the Damas Trust.

12

**Civil No. 14-1909 (GAG)**

Plaintiffs would have this Court stretch the limits of trust law and common sense to declare them beneficiaries of the Damas Trust and give them standing against BPPR as Trustee.  Plaintiffs jump great strides to reach the questionable conclusion that they are beneficiaries of the Damas Trust "in accordance to the provisions of Section 4105(1)."   (Docket No. 9 ¶30.)  This assertion is *non sequitur*.  This Court does not read this abstraction anywhere within Section 4105 or, for that matter, the Damas Trust Deed itself.

As a threshold matter, the language of the Damas Trust Deed is clear in specifying its purpose and its beneficiaries: "This Trust is established for the purpose of paying malpractice claims against HOSPITAL DAMAS and SETTLOR."  (Docket No. 50-2 at 11.)  The phrase "paying malpractice claims" is used in the abstract, figurative sense, and refers to no specific claimant but rather a malleable class of individuals that is subject to the ebb and flow of court proceedings and settlement agreements.  Id.  The quoted phrase cannot plausibly be read to indicate that Plaintiffs are beneficiaries of the Damas Trust.  Rather, based on the substance and structure of the Trust Deed, as well as the underlying statutory framework under which it was established, this Court reads the phrase narrowly to imply that the beneficiaries are Hospital Damas and the Settlor insofar as they are accountable either by operation of law, or negotiated settlements, for malpractice claims.  In other words, the Damas Trust's moniker identifying itself as a *self*-insurance trust perfectly captures HDI's status as a beneficiary of the financial cushion the trust provides against malpractice claims.  Thus, BPPR owes no duty to Plaintiffs and cannot be held liable to Plaintiffs for any alleged negligent administration of the Damas Trust.

Nevertheless, Plaintiffs also argue that by being creditors of Hospital Damas and party to the reorganization plan approved by the Bankruptcy Court, they somehow become beneficiaries by virtue of having a "special" or "equitable" interest in the trust assets.  (Docket No. 9 ¶38.)

13

**Civil No. 14-1909 (GAG)**

Plaintiffs would have us read into the Bankruptcy Court-approved reorganization plan's boilerplate terminology an indication that BPPR agreed to be held liable to Plaintiffs for the alleged conduct at bar. (Docket No. 66 at 11.) Plaintiffs grossly exaggerate the contents, scope and extent of the reorganization plan. By way of example, though BPPR, as Trustee of the Damas Trust, is listed amongst other parties as having agreed to allow Plaintiffs to "pursue *any* cause of action" (Docket No. 66 at 11) against BPPR for the reimbursement or replenishment of the Damas Trust, it does not follow that Plaintiffs may bring *this* action before *this court* or otherwise automatically declare themselves beneficiaries of said trust, subverting statutory and contractual principles found elsewhere. Surplusage referencing unspecified rights, likely meant to ensure the reorganization plan's ability to survive the vagaries of Puerto Rico law, should not be read to concoct synthetic rights that do not exist in law or contract. Put simply, Plaintiff may well be able to pursue *a* claim against BPPR, but it does not mean that they can pursue *this* claim, the Reorganization plan's wording notwithstanding.

The Court notes that the analysis above is supported by other provisions of the Damas Trust Deed that underscore the degrees of separation between BPPR, as Trustee of the Damas Trust, and Plaintiffs, as medical malpractice claimants. For example, BPPR is only responsible for the sums of money received from the settlor and is not responsible for whether these funds comply with statutory provisions or contractual requirements incurred by the settlor. (Docket No. 49-8 at 5.) In addition, the settlor's board of directors "shall have the *exclusive* right to enforce any and all provisions" of the Damas Trust. Id. (emphasis added). Furthermore, the fund's disbursement mechanism leaves no room for doubt that any right owed to Plaintiffs that may incidentally emanate from the internal affairs of the Damas Trust has nothing to do with BPPR. Per the Damas Trust Deed, once the Insurance Commissioner approves a disbursement, the settlor's board of

14

**Civil No. 14-1909 (GAG)**

directors can direct the Trustee to make "such payments at such times to such persons and in such amounts" as the Board request. (Docket No. 49-8 at 10.) In other words, the four corners of the trust deed make it patently clear that the ultimate volitional prerogative on how trust funds are disbursed, and its accompanying shadow of liability, befalls on HDI and Fundación as settlors. The phrase Plaintiffs invoke ultimately appears to be nothing more than a limiting principle, designed to ring-fence the trust assets and make sure they are used for a specific purpose consonant with Puerto Rico public health law and public policy.

Plaintiffs would have the Court read into both Puerto Rico's Insurance Code and the trust deed a provision that simply does not exist. It would be anomalous to make BPPR liable as trustee of the Damas Trust for alleged breaches of fiduciary duties to every potential malpractice claim. Such a holding would blur the distinction that separates BBPR from Hospital Damas/Fundación and Hospital Damas/Fundación from malpractice claimants. These distinctions promote the Insurance Code's policy to guarantee payment of malpractice claims through a *trust*, a vehicle purposely designed to segregate funds, preserve, and administer them. The trust keeps these funds separated from the reach of an entire universe of past, current and future malpractice claimants.

The Court is all the more convinced of this reasoning in light of the fact that the Insurance Code does not require a medical malpractice insurance trust to contain an amount of funds consistent with the entire bulk of outstanding malpractice claims, instead requiring professionals to have $100,000 per incident (unless the Commissioner requires $500,000 per incident) and an aggregate of $1,000,000 for healthcare institutions. See P.R. LAWS ANN. tit. 26, § 4105(1). Requiring the Damas Trust to continually hold within its purse an amount equal to every outstanding claim would be fiscally preposterous and is not required by any statute. If the Court allowed every malpractice claimant to declare itself a beneficiary of the Damas Trust, simply by

15

**Civil No. 14-1909 (GAG)**

virtue of his status as either a legal claimant or bankruptcy creditor, the long-term purpose of the trust to guarantee the availability of *some* but not necessarily all funds owed to *bona fide* malpractice claimants would be unraveled.   For example, if each malpractice claimant were able to call upon BPPR as Trustee to disburse the finite amount of monies available at any moment there would be no way to prevent the Damas Trust from being liquidated by one claimant to the detriment of all other claimants as they race to empty the trust and leave subsequent claimants completely bereft of the money to which they too are entitled.   To avoid this quandary, the need to protect the trust funds from the direct reach of claimants is all the more reasonable and the requirement that the Insurance Commissioner make the final determination on funds withdrawals makes perfect sense.

Even if the Court were to assume that Plaintiffs are beneficiaries of the Damas Trust, they would nevertheless lack standing.  Relying on persuasive precedent from the Puerto Rico Court of Appeals, the Court has held that Puerto Rico's Insurance Commissioner is the ultimate regulator of the insurance market and has primary jurisdiction over these claims against BPPR because the Damas Trust was created pursuant to a special law within the Insurance Code.  Maldonado, 2013 WL 1943053, at *2.   As the Court has noted before, adjudicating these types of claims requires particular knowledge and "the expertise of the Office of the Insurance Commissioner will be necessary in the factual findings and legal conclusions that will be made regarding the compliance issues with the Insurance Code."  Id.  Furthermore, in support of the above proposition, the Court also notes that the Insurance Code's provisions on medical malpractice guarantee trusts are fraught with references to the Insurance Commissioner's ultimate authority in deciding various matters, including whether a higher minimum aggregate funds threshold is needed, whether two institutions can establish a guarantee trust in common and whether funds from the Damas Trust may be

16

Civil No. 14-1909 (GAG)

withdrawn.  Tit. 26, § 4105.  These requirements further accentuates the pivotal role played by the Office of the Insurance Commissioner in re-enforcing this and its primary jurisdiction.[4]

Accordingly, for the reasons articulated in this Opinion and Order, this Court **GRANTS** Defendant BPPR's motion to dismiss at Docket No. 50.  Plaintiffs' negligence claims against BPPR with respect to its management of the Damas Trust are **DISMISSED with prejudice**.

### III.   Fundación's motion for summary judgment

Fundación moves to persuade the Court that judgment as a matter of law should be entered in its favor by arguing that: 1) Plaintiffs' claims are precluded by the principle of *res judicata*.  Specifically, they contend collateral estoppel and issue preclusion bar Plaintiffs from litigating against Fundación the issue of the illegality of Hospital Damas' operation; 2) Plaintiffs are precluded from filing their medical malpractice claim against Fundación under the claim splitting doctrine, and; 3) the Court lacks jurisdiction over the issue of HID's self-insurance fund. (Docket No. 48.)  In turn, Plaintiffs argue Fundación's preclusion argument is destroyed because of the addition of the sibling plaintiffs, who were not party to the 2007 case.  (Docket No. 66.) Moreover, they argue that Puerto Rico substantive *res judicata* principles should be applied by this Court, instead of federal *res judicata* principles, as Fundación proposes.  Id.

####    A.  Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[4] This Court also notes that Section 4105's financial solvency requirements, while not self-executing, do not explicitly confer on malpractice claimants any statutory right of enforcement.  Section 4105 provides instead for the suspension of a healthcare professional or institution's license and disciplinary actions by the Puerto Rico Secretary of Health or Board of Examiners.  Id. §4105(4).

Civil No. 14-1909 (GAG)

of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.Civ. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Civil No. 14-1909 (GAG)

### B.  Res judicata

As recited in section *I.a.* of this Opinion and Order, Plaintiffs have been party to two federal litigations that relate to the instant case: one before the Bankruptcy Court, Bankr. Case No. 10-8844 (EAG), and the other before this Court, Case No. 07-1032 (JAG), which was also before the Court of Appeals for the First Circuit.   In the former, Plaintiffs, as medical malpractice claimants in HDI's Chapter 11 Bankruptcy Reorganization proceeding, raised, submitted and litigated the issue regarding the management and operation of Hospital Damas. (Docket No. 9 ¶¶4-6.)   In the latter, Vargas Colon, representing her daughter, lodged a medical malpractice suit against Hospital Damas for same the alleged negligent incident involving the delivery and birth of Minor L.C.V. Id.  The instant action is Plaintiffs' third time to the plate.

Fundación argues Plaintiffs are precluded from challenging, once again, the legality of HDI as operator of Hospital Damas, under the principles of *res judicata*.[5]   (Docket No. 48 at 10.)  *Res judicata* is the general term that refers the different ways a court judgment affects subsequent litigation of related matters.  See 20 Wright and Miller, Federal Practice & Procedure Deskbook § 107 (2013).  On one hand, *res judicata* has the effect of foreclosing litigation of matters that have never been litigated, but should have been raised in an earlier suit. This effect is also known as "*claim preclusion.*"  On the other hand, "the doctrine of *collateral estoppel*, or *issue preclusion*, is related but distinct. Under collateral estoppel, once a court has actually decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of that factual or legal issue in a suit on a different cause of action involving a party to the first

---

[5]   The Court applies the federal principle of res judicata as the preclusive effect in question stems from a prior judgment of a federal court.  See In re El San Juan Hotel Corp., 841 F. 2d 6, 9 (1st Cir. 1988).  The federal law of *res judicata* "governs the effect of a prior federal judgment in a diversity case." Johnson v. SCA Disposal Services of New England, Inc., 931 F.2d 970, 974 (1st Cir .1991).

Civil No. 14-1909 (GAG)

action." Apparel Art Int'l Inc. v. Amertex Enterprises Ltd., 48 F.3d 576, 583 n.9 (1995) (citing

Allen v. McCurry, 449 U.S. 90, 94 (1980)); Taylor v. Sturgell, 553 U.S. 880, 892 (2008)).

"Under the federal law of *res judicata*, a final judgment on the merits of an action precludes

the parties or their privies from re-litigating claims that were raised or could have been raised in

that action." Apparel Art Int'l, 48 F.3d at 583; see also González v. Banco Cent. Corp., 27 F.3d

751, 755 (1st Cir. 1994); Allen, 449 U.S. at 94.   "The policy rationale behind *res judicata* is to

'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by

preventing inconsistent decisions, encourage reliance on adjudication.'" Apparel Art Int'l, 48

F.3d at 576 (quoting Allen, 449 U.S. at 94).   The First Circuit has further indicated that claim

preclusion and issue preclusion operate "as an absolute bar to the re-litigation of the same cause

of action between the parties (or their privies) and that a prior judgment rendered on the merits is

conclusive not only to the issues which were determined but *as to all the matters which might*

*have been determined as well*." Rivera v. Puerto Rico Elec. Power Auth, 4 F. Supp. 3d. 342. at

350; Westcott Const. v. Firemen's Fund of N.J., 996 F.2d 14, 16 (1st Cir. 1993) (quoting

Griffin v. State of R.I., 760 F.2d 359, 360 (1st Cir. 1985)).

To activate its preclusive effect, the doctrine of *res judicata* requires "(1) a final

judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action

asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two

suits." González, 27 F.3d at 755.

### i.   Final judgment on the merits

First, the Court must evaluate the finality of the prior judgment.  For purposes of finality,

a final decision is one that "ends the litigation on the merits and leaves nothing for the court to

do but execute the judgment." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373-374

Civil No. 14-1909 (GAG)

(1981); see also Medina-Padilla v. Piedmont Aviation Services, Inc., No. CIV. 14-1048 (DRD), 2015 WL 1033918, at *5 (D.P.R. Mar. 10, 2015).

The Bankruptcy Court, armed with its authority to adjudicate core matters in bankruptcy proceedings under 28 U.S.C. § 157, addressed Plaintiffs' request in this action —as part of a class of medical malpractice claimants in HDI's bankruptcy proceeding— where the malpractice claimants sought the dismissal of HDI's Chapter 11 reorganization petition, asserting HDI's operations were illegal and unlawful and that HDI's false statements, misrepresentations and bad faith warranted the dismissal of the petition, pursuant to section 1112 of the Bankruptcy Code. (Bankr. Case No. 10-8844 (EAG), Docket No. 953.)  Ultimately the Bankruptcy Court, not persuaded by Plaintiffs' arguments and evidence presented, denied the request for dismissal of HDI's petition. Id.  In doing so, the Bankruptcy Court determined that:  "Fundación Damas, a not-for-profit corporation, owns the real property on which the hospital facility known as Hospital Damas is located" and "[i]n 1987, Fundación Damas incorporated the debtor and then leased the hospital facility to the debtor."  See In re Hospital de Damas, Inc., 2012 WL 1190651 at *5 (Bankr. D.P.R. 2012).  And last but not least, *the Bankruptcy Court concluded that HDI had been operating Hospital Damas since 1987.*  Id. at 6; Docket Nos. 48 ¶19; 67 ¶19 (emphasis added).

After the Bankruptcy Court issued the above findings, Plaintiffs moved this Court to alter its judgment in Case No. 07-1032, pursuant to FED. R. CIV. P. R. 60, to include Fundación as party to the settlement agreement reached in said case between Plaintiffs and HDI.  (Docket No. 49 ¶20.) In light of the Bankruptcy Courts' ruling, the Court denied Plaintiffs' request and stated that "[a]s explained by the Magistrate Judge, the Bankruptcy Court made the factual findings that, regardless of Fundación's ownership of the property comprising the hospital, Hospital Damas, Inc. was

Civil No. 14-1909 (GAG)

*indeed* the hospital's operator since 1987, and; thus, liable for the negligence that caused Plaintiff's injuries." (Docket Nos. 49 ¶21; 49-6 at 2-3.)

Final judgment was entered dismissing with prejudice Plaintiffs' 2007 complaint against HDI, once the parties reached a settlement agreement and requested voluntary dismissal. (Case No. 07-1032 (JAG), Docket No. 155.)

ii.   <u>Identicality of the causes of action</u>

The Court has no doubt that the causes of action at issue are identical.   For purposes of the identicality requirement, the Court follows the "transactional approach" adopted by the First Circuit, to determine the identity of the underlying claims or causes of action.   <u>See</u> <u>Apparel Art Int'l</u>, 48 F.3d at 583-84.   "Under said approach, courts must determine whether the claims asserted by the plaintiff in the present case arise from *the same nucleus of operative facts* as those claims that were the subject of the prior judgment."   <u>Medina-Padilla</u>, 2015 WL 1033918, at *5 (internal citations omitted).

The transactional approach "recognizes that a valid and final judgment in an action will extinguish subsequent claims 'with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" <u>González</u>, 27 F.3d at 755 (citing <u>Kale</u>, 924 F.2d at 1166; <u>Manego v. Orleans Bd. of Trade</u>, 773 F.2d 1, 5 (1st Cir. 1985); <u>see also</u> Restatement (Second) of Judgments § 24 (1992).   The rationale behind this requirement is to prohibit plaintiffs from splitting their claims, therefore joining all claims that share a common nucleus of operative facts into one action.   "A cause of action is defined as a set of facts which can be characterized as a single transaction or a series of related transactions. The cause of action, therefore, is a transaction that is identified by a common nucleus of operative facts." <u>Apparel Art Int'l</u>, 48 F.3d at 583-84.   "Although a set of facts may give rise to multiple counts

22

Civil No. 14-1909 (GAG)

based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action."[6]  Id. (internal quotations omitted).

 *Res judicata* seeks to conserve judicial resources by "prevent[ing] plaintiffs from splitting their claims" and instead "provide a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit." Apparel Art Int'l, 48 F.3d at 583 (citing Kale, 924 F.2d at 1166).   Therefore, plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary "to avoid duplicative litigation." Elgin v. Dep't of Treasury, 132 S. Ct. 2126, 2147 (2012) (internal quotations omitted);   see also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976); Stone v. Dept. of Aviation, 453 F.3d 1271, 1278 (C.A.10 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common-law rule of claim preclusion prohibiting the splitting of actions").   See also 18 C. Wright et al., Federal Practice and Procedure § 4406 (2d ed. 2002, Supp.2011) (discussing "principles of 'claim splitting' that are similar to claim preclusion, but that do not require prior judgment").

---

[6] Only where two separate suits involve sufficiently identical causes of action does a judgment in an earlier action preclude litigation of claims in a subsequent action. The focal inquiry in assessing the applicability of *res judicata*, therefore, is whether the causes of action raised in separate lawsuits are indeed the same. This Court has adopted the methodology of the Restatement (Second) of Judgments in defining the cause of action for *res judicata* purposes. Accordingly, we follow a transactional approach to determine the identity of the underlying claims or causes of action.

Apparel Art Int'l, 48 F.3d at 583-84 (internal quotations omitted); see also González, 27 F.3d at 755; Manego, 773 F.2d at 5.

23

Civil No. 14-1909 (GAG)

Plaintiffs' instant medical malpractice claim is a replica of the one lodged against HDI in the 2007 complaint.   (See Docket Nos. 9 ¶16; 49-1 ¶5.)  Both actions –the case at bar and the case presided by Judge Jay A. García-Gregory– are medical malpractice claims under Articles 1802 and 1803 of Puerto Rico Civil Code that revolve around the delivery of minor L.C.V.'s birth.   The above-captioned complaint is merely a restatement of the facts alleged in the 2007 Complaint.  (See Docket Nos. 9 cf 49-1.)  Plaintiffs' claims and causes of action in both cases arise from the same facts regarding time, space, origin and motivation.

Accordingly, for purposes of the claim preclusion analysis, Plaintiffs' 1802 and 1803 claims lodged against HDI in the 2007 action stem out of the same nucleus of operative facts as the 1802 and 1803 claims currently pending against Fundación.   As such, the second element of the claim preclusion doctrine, the cause-of-action-identicality requirement, is met.

               iii.   Identicality of the parties- Privity of nonparty and the defensive use of "preclusion"

After analyzing the identicality of the causes of action, the Court must inquire whether the final judgment was entered against the same parties or persons in privity with the parties of the second action.[7]   Privity has been found to exist "where the party adequately represented the nonparties' interests in the prior proceeding."  Medina-Padilla, 2015 WL 1033918, at *5.  The Court considers not only the identity of interests between the two parties, but also "whether the party's interests were fully represented in the earlier case, albeit by another."   Id. (quoting County of Boyd v. U.S. Ecology, Inc., 48 F.3d 359, 361 (8th Cir. 1995)).

---

[7] "The term privity is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include the other within res judicata.")  Medina-Padilla, 2015 WL 1033918, at *5 n.4.

Civil No. 14-1909 (GAG)

Here, Plaintiffs sue Defendant Fundación as "owner and operator of Hospital Damas" at the time of the events.   (Docket No. 9 ¶16.)   In the 2007 case, Plaintiffs filed suit against Hospital Damas, or alternatively John Doe Corp. (which later on was identified as HDI) as "owner and operator of a hospital of the same name." (Docket No. 49-1 ¶5.)   As such, the only difference between the earlier and present actions is the corporate entity of the Hospital "manager and operator" defendant.  Because the Court finds there is sufficient identity between the two defendants, Fundación and HDI are in privity.

This "party switching" tactic assumed by Plaintiffs thwarts the efficiency of the judicial system and the adequate use of judicial resources.  To this effect, the Supreme Court in <u>Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.</u>, 402 U.S. 313, 329 (1971), recognized the use of non-mutual defensive collateral estoppel as an exception to *res judicata*'s mutuality requirement.[8]  "Permitting litigants to assert collateral estoppel in a defensive pose promotes efficiency by discouraging speculative lawsuits and conserving the resources of defendants." <u>Acevedo-Garcia v. Monroig</u>, 351 F.3d 547, 574 (1st Cir. 2003) (discussing Justice White reasoning in <u>Blonder-Tongue</u>).  The burden of avoiding preclusion, however, is placed on the

---

[8] In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue. And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources. Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.

<u>Blonder-Tongue Labs.</u>, 402 U.S. at 329.

**Civil No. 14-1909 (GAG)**

party who asserts lack of a full and fair opportunity to litigate in the first action.  See 18A Wright and Miller, Federal Practice & Procedure § 4465 (2d ed. 2015).

Nonmutual collateral estoppel "seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." Rodriguez-García v. Miranda-Marin, 610 F.3d 756, 771 (1st Cir. 2010) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4).  "Mutuality between the parties is not required in defensive collateral estoppel cases so long as 'the plaintiff has had a full and fair opportunity to litigate the contested issue previously.'" Georgia-Pac. Consumer Products LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098-99 (6th Cir. 2012) (quoting McAdoo v. Dallas Corp., 932 F.2d 522, 523 (6th Cir. 1991)).  "Defensive use of collateral estoppel precludes a plaintiff from re-litigating identical issues by merely switching adversaries," and "gives a plaintiff a strong incentive to join all potential defendants in the first action if possible." Parklane Hosiery, 439 U.S. at 329-30.

This scenario falls squarely within the non-mutual collateral estoppel exception. Plaintiffs asserted, for the first time, their medical malpractice claim against Hospital Damas in their 2007 complaint.   Said case was extensively litigated, up until the eve of trial.  The parties asked for time conclude their settlement negotiations three days before the scheduled trial date. (Case No. 07-1032 (JAG), Docket Nos. 143-155.)  The case never made it to trial because the parties reached a confidential settlement agreement and judgment was entered dismissing all claims with prejudice. Id. at Docket No. 155.  In the case at bar, Fundación invokes *res judicata* in the defensive form.  Accordingly, the Court reasons that Plaintiffs should be barred from re-litigating their medical malpractice claim, as they were already afforded a fair opportunity to litigate.  In 2007, Plaintiffs had their day in court, albeit against another defendant.  Fundación was adequately represented by HDI in the prior proceeding.  For purposes of the third element of

Civil No. 14-1909 (GAG)

the claim preclusion doctrine, Defendants Fundación and HDI are identical.  The third prong of the claim preclusion test is met.

Additionally, the Court notes that Plaintiffs provide no explanation as to why Fundación was not brought in the 2007 litigation, nor even try to establish a difference between both cases and/or between Defendants HDI and Fundación.  By splitting their claims into multiple litigations Plaintiffs are trying to take a third bite at the apple.  This is precisely the type of action barred by the doctrine of *res judicata*.[9]

As such, the three elements of the claim preclusion doctrine are met.  Plaintiffs are precluded from asserting against Fundación medical malpractice cause of action under Articles 1802 and 1803 of the Puerto Rico Civil Code.

### C.  Attorneys' fees

Lastly, Fundación moves the Court to award attorneys' fees as sanction upon Plaintiffs "for their frivolity and obstinacy in the filing of their complaint."  (Docket No. 48 at 24.)  The Court deems Fundación's request reasonable and foresees the imposition of an attorney's fees award as sanction highly plausible.  Nevertheless, before making a final determination, the Court

---

[9] Additionally, the Court notes that *res judicata* has further implications in this case.  Though the issue regarding the alleged illegality of HDI's operations has already been litigated and adjudicated in the two federal proceedings, the Court need not enter those waters in light of the reasoning described above. In abundance of caution and without going into much detail, the Court briefly explains the effect of res judicata in terms of the alleged illegality of HDI's operations also poses an issue of *res judicata*.

"The prevailing rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."  White v. Kubotek Corp., 487 B.R. 1, 10-11 (D. Mass. 2012) (citing 11 F.D.I.C. v. Shearson–American Exp., Inc., 996 F.2d 493, 497 (1st Cir. 1993).  The alleged illegality of HDI's operations was raised and adjudicated by the Bankruptcy Court.  Judgment was formally entered as to this issue when HDI's plan of reorganization was confirmed, after the Bankruptcy Court ruled on the medical malpractice claimants' argument.  The undersigned, thus, is certain that the issue argued and adjudicated by the bankruptcy court is identical to the one Plaintiffs raise today; therefore, Plaintiffs are precluded from re-litigating the issue of HDI's operations, under the theory of issue preclusion-*res judicata*.

**Civil No. 14-1909 (GAG)**

would like to hear from the parties.  The parties shall, within twenty days from the entry of this order, **SHOW CAUSE** as to the imposition of sanctions against Plaintiffs, which may include those under FED. R. CIV. P. R. 11, 28 U.S.C. § 1927, and any other applicable provision. Moreover, Fundación shall also renew its request for attorney's fees, formally and expressly asserting the amount requested and a detailed description of the requested fees within said twenty-day deadline.  BPPR may also request attorney's fees.  Once submitted, the Court will determine whether sanctions and attorney's fees are indeed warranted.

For the reasons set forth above, the Court **GRANTS** Fundación's motion for summary judgment at Docket Nos. 48 and 49 and **DISMISSES with prejudice** Plaintiffs claims against Fundación.  Judgment shall be entered accordingly.

**IV.    Conclusion**

For the reasons detailed above, BPPR's motion to dismiss at Docket Nos. 50 is **GRANTED** and Fundación's motion for summary judgment at Docket Nos. 48 is **GRANTED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 19th day of January, 2016.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI

United States District Judge

28